# SUPPLEMENT.

## OPINION OF THE JUSTICES TO THE SENATE.

Under the Constitution of the Commonwealth and the second amendment thereof the Legislature has no power to pass a general law enabling such towns as may adopt its provisions to substitute for the town meeting form of government, in which every qualified voter of the town may participate, a form wherein the town meeting shall consist of a certain percentage of the voters elected as town meeting members, so called, by the voters at large.

THE following order was passed by the Senate on April 30, 1918, and on May 7, 1918, was transmitted to the Justices of the Supreme Judicial Court. On May 13, 1918, the Justices returned the answer which is subjoined.

WHEREAS, There is now pending in the Senate a bill, numbered House 1441, entitled "An Act relative to the administration of town affairs and to authorize the adoption of a limited town meeting," a copy of which is herewith submitted (with changes, as it was passed to be engrossed by the House); and

WHEREAS, There exist grave doubt and uncertainty as to the constitutional power of the General Court to enact the said bill; therefore be it

ORDERED, That the Senate require the opinions of the Honorable the Justices of the Supreme Judicial Court upon the following important questions of law:

First. Has the General Court the power, under the Constitution of the Commonwealth, to pass a general law enabling such towns as may adopt its provisions to substitute for the town meeting form of government, in which every qualified voter of the town may participate, a form wherein the town meeting shall consist of a certain percentage of the voters elected as town meeting members, so called, by the voters at large?

Second. Would House Bill, Number 1441, above mentioned,

as passed to be engrossed by the House, be constitutional if enacted?

House Bill No. 1441, as it was passed to be engrossed by the House, was as follows:

An Act relative to the Administration of Town Affairs and to authorize the Adoption of a Limited Town Meeting.

Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same, as follows:

SECTION 1. The selectmen of any town that shall accept this act shall forthwith upon its acceptance divide the territory of the town into voting precincts, to be designated by numbers or letters and to contain approximately an equal number of registered male voters, but not less than three hundred nor more than one thousand voters in any precinct. The precincts shall be so established as to consist of compact and contiguous territory to be bounded, so far as is practicable, by the centre line of known streets and ways and by other well-defined limits. The boundaries shall be reviewed and, if need be, revised, partly or wholly, by the selectmen, in May once in every five years. The selectmen shall, within ten days after any establishment or revision of the precincts, file a report of their doings with the town clerk, the registrars of voters, and the assessors, with a map or maps or description of the precincts and the names and residences of the voters therein. The selectmen shall also cause to be posted in the town hall a map or maps or description of the precincts as established or revised from time to time, with the names and residences of the registered voters therein; and they shall also cause to be posted in at least three public places in each precinct a map or description of that precinct, with the names and residences of the voters therein. The division of the town into voting precincts and any revision of such precincts shall take effect upon the date of the filing of the report thereof by the selectmen with the town clerk. Whenever such precincts are established or revised, the town clerk shall forthwith give written notice thereof to the secretary of the Commonwealth, stating the number and designation of the precincts. The provisions of chapter eight hundred and thirty-five of the acts of nineteen hundred and thirteen, and of any amendments thereof, relating to precinct voting at all elections, so far

as the same are not inconsistent with this act, shall apply to all elections and primaries in a town which adopts this act upon the establishment of voting precincts as hereinbefore provided.

SECTION 2. The registered male voters in each of such precincts shall, at the first annual town election held after the establishment of the precincts, and conformably to the laws relative to elections, not inconsistent with this act, elect by ballot six per cent of such voters in such precinct other than the officers hereinafter designated in section three as town meeting members at large, such elected voters to be town meeting members of the town, one third of whom shall be elected for the term of one year, one third for the term of two years and one third for the term of three years from the day of the annual town meeting; and thereafter, except as hereinafter provided, at each annual town election the voters of each precinct in the town shall, in like manner, elect two per cent of their number to be town meeting members of the town for the term of three years, and shall at such election fill for the unexpired term or terms any vacancies then existing in the number of town meeting members in their respective precincts. Upon every revision of the precincts or of any of them the term or terms of office of all town meeting members within every such revised precinct shall terminate on the date of the next annual town meeting and at the annual town election on the same date there shall be an entirely new election of town meeting members in every precinct so revised, as well as in any precinct or precincts newly established. The town clerk shall, after every election of town meeting members, forthwith notify each member by mail of his election, with instructions to signify in writing to the town clerk, within seven days after the receipt of the notice, his acceptance or refusal of such membership.

SECTION 3. Any town meeting held under the provisions of this act, except as is otherwise provided, shall, at and after the first annual election held under this act, be limited to the voters elected under section two together with the following designated as town meeting members at large, namely, any member of the General Court of the Commonwealth of Massachusetts who is a registered voter of the town, the moderator, the town clerk, the selectmen, the town treasurer, the town accountant, the town counsel, the town collector of taxes and the town auditors, the

road commissioners, superintendent of streets or highway surveyor, the assessors, the water or sewer commissioners, the school committee, the members of the finance commission or committee and the chairman of any board constituted by law or by vote of the town. The town clerk shall notify the town members of the time and place at which town meetings are to be held, such notices, when practicable, to be sent by mail at least four days before any such meeting. The town meeting members, as aforesaid, shall be the judges of the election and qualification of their members. A majority of the town meeting members at any such limited town meeting shall constitute a quorum for doing business; but a less number may organize temporarily and may adjourn from time to time. All town meetings shall be public. The town meeting members as such shall receive no compensation. Subject to such conditions as may be determined from time to time by the members of a limited town meeting any voter of the town who is not a town meeting member may speak, but not vote at such a meeting. A town meeting member may resign by filing a written resignation with the town clerk, and his resignation shall take effect on the date of such filing. A town meeting member who removes from the town shall cease to be a town meeting member.

Section 4. Nominations of candidates for town meeting members to be elected under this act shall be made by nomination papers signed by not less than thirty voters of the precinct in which the candidate resides and filed with the town clerk at least ten days before the election. No nomination papers shall be valid in respect to any candidate whose written acceptance is not thereon or attached thereto.

Section 5. The articles in the warrant for every town meeting, so far as they relate to the election of the moderator, town officers, and town meeting members, as hereinbefore provided, to granting licenses for the sale of intoxicating liquors, referenda, and all matters to be acted upon and determined by ballot, shall be so acted upon and determined by the voters of the town in their respective precincts. All other articles in the warrant for any town meeting shall be acted upon and determined exclusively by town meeting members at a meeting to be held at such time and place as shall be set forth by the selectmen in the war-

rant for the meeting and subject to the referendum provided for by section ten.

SECTION 6. A moderator shall be elected by ballot at each annual town meeting and shall serve as the moderator of all town meetings except as otherwise provided by law until his successor is elected and qualified. Nominations for moderator and his election shall be as in the case of other elective town officers, and any vacancy in such office may be filled by the town meeting members at a meeting held for that purpose. If a moderator is absent, a moderator pro tempore may be elected by the town meeting members.

SECTION 7. Any vacancy or vacancies in the full number of town meeting members from any precinct may be filled by appointment until the next annual election by the remaining members of the precinct from among the registered male voters thereof. Upon petition therefor, signed by not less than ten town meeting members from the precinct, notices thereof shall be promptly given by the town clerk to the remaining members from the precinct in which such vacancy or vacancies exist, and he shall call a special meeting of such members for the purpose of filling such vacancy or vacancies. He shall cause to be mailed to each of such members, not less than four days before the time set for such meeting, a notice, specifying the object and the time and the place thereof. At such meeting a majority of the members shall constitute a quorum, and they shall elect from their own number a chairman and a clerk. The choice to fill any such vacancy shall be by ballot and a majority of the votes cast shall be required for a choice. The chairman and clerk shall make a certificate of such choice and forthwith file the same with the town clerk, together with a written acceptance by the member or members so chosen, who shall thereupon be deemed elected and qualified a town meeting member or members, subject to the right of all the town meeting members to judge of the election and qualification of members as set forth in section three.

SECTION 8. If at any limited town meeting, a vote is passed authorizing the expenditure of twenty-five thousand dollars or more as a special appropriation, such vote shall not become operative until after the expiration of five days, exclusive of Sundays and holidays, from the dissolution of such meeting. If,

within the said five days a petition signed by not less than twenty voters from each precinct therein, with their street addresses, is filed with the selectmen, asking that the question or questions involved in such vote be submitted to the voters at large, the selectmen and the moderator shall, within fourteen days after the filing thereof, present the question or questions so involved to the voters at large convened in a special town meeting to be held for that purpose, at which meeting the ballot and the check lists shall be used in the respective precincts, and such question or questions shall be determined by the vote of a majority of such voters at large of the town voting thereon at such special town meeting. If such petition be not filed within the said period of five days, the vote in the limited town meeting authorizing such expenditure shall become operative upon the expiration of the said period.

SECTION 9. The municipal corporation of a town, after the acceptance of this act, shall have the capacity to act through and to be bound by its said town meeting members who shall, when convened from time to time as hereinunder provided, constitute limited town meetings; and such limited town meetings shall exercise exclusively, so far as shall conform to the provisions of this act, all powers vested in the municipal corporation of the town. Action in conformity with all provisions of law now or hereafter applicable to the transaction of town affairs in town meetings shall, when taken by any limited town meeting in the town in accordance with the provisions of this act, have the same force and effect as if said action had been taken in a town meeting, open to all the voters of said town, as heretofore organized and conducted.

SECTION 10. This act shall not abridge the right of the voters or citizens of a town to hold general meetings according to any right secured to them by law or by the Constitution of the Commonwealth; nor shall this act confer upon any limited town meeting the power finally to commit the town to any measure affecting its municipal existence or making any change in the form of its government, without action thereon by the voters of the town at large.

SECTION 11. Upon petition of ten per cent of the registered male voters of a town filed with the selectmen at any time within thirty days prior to any annual town meeting, this act shall be

submitted to the voters of the town at such meeting. The act shall be submitted in the form of the following question to be placed on the official ballot: — "Shall chapter      of the acts of 1918 relative to limited town meetings be accepted by the town of            ?" If a majority of the voters voting thereon vote in the affirmative, this act shall take effect in that town; otherwise, it shall not take effect.

To the Honorable Senate of the Commonwealth of Massachusetts:

We, the undersigned Justices of the Supreme Judicial Court, have considered the questions, of which a copy with the order relating thereto is hereto annexed, and respectfully submit this opinion:

The questions and the accompanying bill relate to the power of the General Court under the Constitution to enact a general statute abolishing the town meeting form of government and substituting for it a qualified kind of municipal meeting wherein the power to vote shall be exercised alone by certain representative voters, consisting of a percentage of the total number, chosen by their fellows from precincts into which the town is to be divided, such statute to take effect automatically in any town when accepted by the affirmative votes of a majority of the voters at a duly warned town meeting.

.The essential and distinguishing characteristic of the town meeting form of government is that "all the qualified inhabitants meet, deliberate, act and vote in their natural and personal capacities, in the exercise of their corporate powers." *Warren* v. *Mayor & Aldermen of Charlestown*, 2 Gray, 84, 101. Each qualified inhabitant of the town has an indisputable right to vote upon every question presented, as well as to discuss it, or there is no town meeting. This is universally understood as the vital feature of the town system of government as practiced in this Commonwealth continuously from a time long before the Declaration of Independence until the present. This form of local government was the fibre of our institutions when the Constitution was adopted. It is implied whenever the word "town" is used in that instrument. It was held in profound esteem and was guarded with jealous care. The public spirit in Massachusetts which led to the opening battles

of the Revolution was nurtured and promoted in large measure by the deliberations and votes in the various town meetings. *Wheelock* v. *Lowell*, 196 Mass. 220, 227.

It is manifest that this vital feature of the right of each qualified citizen to vote upon every question coming before the town meeting is not preserved in the bill proposed. It was considered doubtful in the early days of the Commonwealth whether the Constitution as originally adopted permitted any substantial change by the General Court in the town meeting form of local government. This doubt prevailed so generally that the second amendment to the Constitution was proposed by the convention of 1820 and was adopted by the people. The purpose and effect of that amendment, reported by a committee of which Daniel Webster was chairman, were clearly set forth by Lemuel Shaw, afterwards Chief Justice, who as a member of that convention was its leading supporter. In debate he pointed out that "The Constitution, as it stands, requires a form of town government, not adapted to the condition of a populous town. The inhabitants of towns meet together for the purpose of giving their votes for town, county, State, and United States officers. In these cases the meeting is not deliberative. But they have another class of duties, which consists in deliberating and acting upon all questions falling within their jurisdiction, in which cases they are to be considered in all respects as deliberative bodies. But the Constitution provides that the inhabitants shall meet and the votes be given in open town meeting; that the votes shall be counted, sorted and declared in open town meeting, in which the selectmen shall preside. These provisions render it imperative that the voters should meet together in one body, be they few or many. . . . This then is the essential difficulty. The General Court can grant powers as occasion may require, but cannot dispense with the mode of organization required by the Constitution. What then is the remedy? It is to authorize such an organization as is adapted to the condition of a numerous people, — such an organization as will admit the inhabitants to meet in sections for the purposes of election, and choose representatives who should meet for the purpose of deliberation, instead of the whole body." Journal Mass. Convention of 1820–21, page 193. That statement of the matter does not appear to have been disputed, but on

the contrary to have been generally approved in the convention, among whose members were most of the leading constitutional lawyers of the State, including a justice of the Supreme Court of the United States, the chief justice and two associate justices of this court, and three others who subsequently became members of this court. That exposition of the law was adopted in substance in *Hill* v. *Boston*, 122 Mass. 344, 354–356, and was recognized in *Larcom* v. *Olin*, 160 Mass. 102, 104. The town is the unit for voting purposes recognized by the Constitution. An amendment was required to permit the division of a town into voting precincts. Article 29.

The fundamental and real distinction between the town and the city organization is that in the former all the qualified inhabitants meet together to deliberate and vote as individuals, each in his own right, while in the latter all municipal functions are performed by deputies. The one is direct, the other is representative. The second amendment to the Constitution provides the only method by which the General Court can erect the representative in place of the direct form of municipal government. The power conferred upon the General Court by the second amendment is restricted so "that no such government shall be erected or constituted in any town not containing twelve thousand inhabitants, nor unless it be with the consent, and on the application of a majority of the inhabitants of such town, present and voting thereon, pursuant to a vote at a meeting duly warned and holden for that purpose." It is plain that the proposed bill is not framed in accordance with that amendment. Its provisions are not limited to towns of twelve thousand inhabitants as thereby required, but are quite unhampered in that particular. The smallest town may adopt it. Moreover, the establishment of a city or other municipal government, representative in its nature, cannot be made by general law but only by special act, passed on the application of the town pursuant to a majority vote of its inhabitants voting thereon. The reason for that is that under the second amendment the first step must be taken in each instance by the town and not by the General Court. This course is reversed when a general law is held out for adoption at any time by any town. That was decided in *Larcom* v. *Olin*, 160 Mass. 102. It is unaffected by art. 42 of the Amendments to the Constitu-

tion permitting a general referendum. Different rules apply respecting a change from one form of representative municipal government to another after the fundamental transition from the town to the representative form has been made in accordance with the terms of the second amendment. Such a change may be made under the provisions of a general act. *Cunningham* v. *Mayor of Cambridge*, 222 Mass. 574, 576. It is an immaterial circumstance that in the proposed bill the name "town" is retained as descriptive of the municipal organization. It is the substance of the thing done, and not the name given to it, which controls. It is plain that the proposed bill extinguishes the essential characteristic of the town form of government as universally understood, and sets up in its place in certain respects a kind of representative form of government. In the second amendment the words "corporate town or towns," of the perfectly well known meaning already adverted to, are used in contrast to the words "municipal or city government," which are generic in signification and include all forms of representative municipal government. To call the municipal organization established by the proposed bill, "town," cannot modify its essential governmental nature.

We are constrained to answer each of the questions in the negative.

Owing to absence from the Commonwealth Mr. Justice Pierce has taken no part in the consideration of the questions.

> ARTHUR P. RUGG.
> WILLIAM CALEB LORING.
> HENRY K. BRALEY.
> CHARLES A. DE COURCY.
> JOHN C. CROSBY.
> JAMES B. CARROLL.