Curran, Dennis J., J.
Scott Graves, a City Councilor of Gardner, Massachusetts, brings claims for declaratory judgment and mandamus relief, and certiorari against the defendants, the City of Gardner and Mark Hawke, its Mayor. Councilor Graves alleges that Mayor Hawke improperly submitted an emergency medical services zone plan to the Department of Public Health without having been empowered to do so by the City Council. The defendants now move to dismiss the complaint on the grounds that Councilor Graves lacks standing to bring declaratory judgment and mandamus claims, and that a certiorari action is inappropriate because there has been no judicial or quasi-judicial action.[4]
For the following reasons, the defendants’ motion to dismiss will be ALLOWED.
FACTUAL BACKGROUND
The City is a municipal corporation, incorporated in 1923 as a Plan B municipal government. In a Plan B city, the Mayor is the chief executive officer, and legislative powers are vested in the City Council. See G.L.c. 43, §§58, 59. Councilor Graves is a member of its Public Safety Committee.
In 2000, the Massachusetts legislature enacted the emergency medical services statute, G.L.c. 111C. Section 10 of that statute calls for a local jurisdiction to develop an EMS service zone plan for adoption by the regional EMS council. The statute further requires the local jurisdiction to recommend a service zone provider to the regional EMS council for recommendation to the Department of Public Health. Id. The local jurisdiction is defined as “an entity empowered by the legislative body within a city, town, fire district or water district to select service zone providers, including, but not limited to, a city council, board of selectmen, board of aldermen, mayor, or town manager.” G.L.c. 111C, §1. The City Council has never empowered a local jurisdiction under that statute.
On May 14, 2014, Mayor Hawke entered into an agreement with MedStar Ambulance, Inc. to provide primary ambulance services for the City. On June 24, 2014, Mayor Hawke submitted an EMS service zone plan to the regional EMS council. On August 27, 2014, Wood’s Ambulance, Inc., the previous primary ambulance service for the City, objected to Mayor Hawke’s failure to obtain statutoiy empowerment from the City Council before submitting the EMS service zone plan. The issue was placed on the City Council’s agenda and referred to its Public Safety Committee.
On December 17, 2014, Councilor Graves filed the complaint in the present action.
DISCUSSION
Aparty moving to dismiss pursuant to Rule 12(b)(6) contends that a complaint fails “to state a claim upon which relief can be granted.” MassR.Civ.P. 12(b)(6). “Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (ellipses and alteration in original; internal quotations omitted), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At the pleading stage, the plaintiff is required to present “factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief in order to reflect the threshold requirement.. . that the plain statement possess enough heft to show that the pleader is entitled to relief.” Id. at 636, quoting Bell Atl. Corp., 550 U.S. at 557 (internal quotations and alterations omitted).
I. Declaratory Judgment
The defendants contend that the claim for declaratory judgment should be dismissed because Councilor Graves lacks standing to bring the action. The prerequisites for bringing a declaratory judgment action are “(1) an actual controversy; (2) standing; (3) joinder of all necessary parties; and (4) the exhaustion of available administrative remedies.” Marion v. Massachusetts Hous. Fin. Agency, 68 Mass.App.Ct. 208, 211 (2007). “It is well settled that G.L.c. 231A does not provide an independent .statutory basis for standing.” Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135 (2000). “Standing exists where a party alleges a legally cognizable injury within the area of concern of the statute at issue.” Entergy Nuclear Generation Co. v. Department of Envtl. Prot., 459 Mass. 319, 326 (2011). “Alleged injury that is ‘speculative, remote, and *548 indirect’ will not suffice to confer standing” Brantley v. Hampden Div. of the Probate and Family Ct. Dept. 457 Mass. 172, 181 (2010), quoting Ginther v. Commissioner of Ins., 427 Mass. 319, 323 (1998).
The defendants contend that Councilor Graves has not alleged sufficient injury because the legislative powers of the Council belong to that body as a whole, and the Councilor may not take action as an individual member. The defendants further argue that only the Council as a whole has standing to assert such a claim and refer to Harvard Square Def. Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass.App.Ct. 491 (1989), and Carr v. Board of Appeals of Medford, 334 Mass. 77 (1956), in support of that contention. These cases are inapposite as they concern administrative decisions on zoning where a statutory basis for standing exists. See G.L.c. 40A, §17.
Councilor Graves does not object to the content of the EMS service zone plan itself, but argues that he is seeking to protect his own interests as a City Councilor. He argues that Mayor Hawke’s action deprived the Council of a statutory power, and that he sustained individual injury as a result. He contends that he is simply asking the court to order Mayor Hawke to follow the law. In a somewhat similar federal case, the Supreme Court held that members of the legislature have “a plain, direct and adequate interest in maintaining the effectiveness of their votes.” Coleman v. Miller, 307 U.S. 433, 438 (1939) (holding that block of state senators whose votes would have been sufficient to defeat ratification of constitutional amendment had standing where their votes were effectively nullified); see also Dennis v. Luis, 741 F.2d 628, 631 (3d Cir. 1984) (holding that legislators had unique statutory right to advise governor on executive appointments and usurpation of that right was sufficiently personal to constitute injury to legislators). “ [Legislators whose votes would have been sufficient to defeat (or enact) a specific legislative act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified.” Raines v. Byrd, 521 U.S. 811, 823 (1997). A claim of injury based on an official’s disobedience or flawed execution of a law alone is simply a generalized grievance about the conduct of the government and does not confer standing on a plaintiff. Russell v. DeJongh, 491 F.3d 130, 134-35 (3d Cir. 2007), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 573-74 (1992).
Courts should exercise restraint in becoming involved in disputes between other branches of government. Raines, 521 U.S. at 833 (Souter, J., concurring); Alliance, AFSCME/SEIU, AFL-CIO v. Commonwealth, 427 Mass. 546, 548 (1998) (“Respect for the separation of powers has led this court, like the Supreme Court and courts in other States, to be extremely wary of entering into controversies where we would find ourselves telling a coequal branch of government how to conduct its business”). Courts should not resolve disputes in cases where a political remedy is available. Raines, 521 U.S. at 830 (noting that plaintiff congressional representatives had adequate remedy in repealing bill); Campbell v. Clinton, 203 F.3d 19, 23 (D.C.Cir. 2000) (holding that plaintiff Congressmen lacked standing to bring suit against President for violation of War Powers Act when Congress could have passed law forbidding use of U.S. forces, or cut off funding for involvement).
In this regard, we ought be reminded of the words of Thomas Jefferson,[5] who wrote:
An elective despotism was not the government we fought for, but one which should not only be founded on true free principles, but in which the powers of government should be so divided and balanced among general bodies of magistracy, as that no one could transcend their legal limits without being effectually checked and restrained by the others.
Thomas Jefferson: Notes on Virginia, 1782.
In the final analysis, Councilor Graves'has failed to allege that a vote by the City Council to empower a local jurisdiction would have produced a different result. See Raines, 529 U.S. at 823. Indeed, no vote of any kind has even taken place. He does not allege that Mayor Hawke interfered with, or prevented, a vote to empower a local jurisdiction from taking place. He cannot plausibly claim that his vote was nullified when no vote has taken place. Such a vote could choose to empower the office of the Mayor, which would render the case moot. The fact that Councilor Graves represents only himself and not the entire City Council is also relevant. See id. at 829. Councilor Graves lacks standing to ask the court to order Mayor Hawke to follow the law. See Russell, 491 F.3d at 134-35. Therefore, where there is a failure to allege a legally cognizable harm, there is no standing to bring a declaratory judgment action. The defendants’ motion to dismiss the claim for declaratory judgment will be allowed.
II. Mandamus
In the alternative, Councilor Graves brings a mandamus action to seek a judgment from the court that Mayor Hawke was not authorized to act as a local jurisdiction, and to compel him to bring the question of who is empowered to act as a local jurisdiction before the City Council. “Relief in the nature of mandamus is extraordinary and may be granted only to prevent a failure of justice in instances where there is no alternative remedy.” Callahan v. Superior Court, 410 Mass. 1001, 1001 (1991). “Mandamus is not an appropriate remedy to obtain a review of the decision of public officers who have acted and to command them to act in a new and different manner.” Boston Med. Center Corp. v. Secretary of the Executive Office of Health and Human Servs., 463 Mass. 447, 470 (2012), quoting Harding v. Commissioner of Ins., 352 Mass. 478, 480 (1967). Like G.L.c. 231A, G.L.c. 249, *549 §5 does not provide an independent statutory basis for standing. Indeck Maine Energy, LLC v. Commissioner of Energy Res., 454 Mass. 511, 516 (2009). Ordinarily, for a plaintiff to have standing to bring a mandamus action, he must allege that the public defendant breached a duty owed to him, and that he suffefed a direct injury. Perella v. Massachusetts Tpk. Auth., 55 Mass.App.Ct. 537, 539 (2002). The requirement of a concrete and particularized harm is enforced with particular rigor, especially where the parties ask the court to intrude on the business of a coequal branch of government. Alliance, AFSCME/SEIU, AFL-CIO, 427 Mass. at 548-49 (noting that danger is particularly acute when relief sought is not monetary damages, but mandamus). Councilor Graves has not suffered a legally cognizable harm from the Mayor’s actions, and therefore lacks standing to bring a mandamus action.
Councilor Graves also asserts that he has standing under the public right doctrine. “Under the public right doctrine, any member of the public may seek relief in the nature of mandamus to compel the performance of a duly required by law. In such cases, the plaintiff acts under the public right to have a particular duty performed that the law requires to be performed. Where the public right doctrine applies, the people are considered the real party in interest, and the individual plaintiff need not show that he has any legal interest in the result.” Perella 55 Mass.App.Ct. at 539-40 (emphasis in Perella), quoting Tax Equity Alliance for Mass. v. Commissioner of Revenue, 423 Mass. 708, 714 (1996). The public right doctrine is narrowly construed and “has always been limited to the enforcement of clear and unequivocal duties.” Perella 55 Mass.App.Ct. at 540; see, e.g., Brooks v. Secretary of the Commonwealth, 257 Mass. 91, 93-94 (1926) (holding that Secretary of State owed public duty to omit proposed law from ballot where constitutional requirements were not met); Brewster v. Sherman, 195 Mass. 222, 224-25 (1907) (finding that registrars of voters owe duly to count votes). The obligation to obey the law “without more, is not a sufficient ground for action by persons who are not injured.” Kaplan v. Bowker, 333 Mass. 455, 460-61 (1956).
In this case, there is no particular duty that Mayor Hawke is required to perform by law. See Perella, 55 Mass.App.Ct. at 539-40. The Councilor asserts that G.L.c. 111C, §1 requires that the City Council empower the local jurisdiction and Mayor Hawke is explicitly required to submit the statutory empowerment to the City Council. Nothing in the statute requires any action whatsoever by the Mayor. At best, the statute could be read to require action only by the City Council. The mere fact that the Mayor may have acted without being empowered by the City Council is insufficient to support a mandamus action. See Kaplan, 333 Mass, at 460-61. Therefore, the defendants’ motion to dismiss the count for mandamus will be allowed.
III. Certiorari
Councilor Graves also brings an action for certiorari under G.L.c. 249, §4. “Whether a complaint adequately alleges a claim for relief in the nature of certiorari may be tested by means of a motion to dismiss.” State Bd. of Ret. v. Woodward, 446 Mass. 698, 704 (2006). “Certiorari is a limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial or quasi-judicial tribunal.” School Comm. of Hudson v. Board of Educ., 448 Mass. 565, 575-76 (2007). Certiorari review is available in cases where there is “(1) a judicial or quasi-judicial proceeding, (2) from which there is no other reasonably adequate remedy, and (3) a substantial injury or injustice arising from the proceeding under review.” Indeck v. Clients’ Sec. Bd., 450 Mass. 379, 385 (2008). Certiorari review is not available to challenge administrative, political, or legislative decisions. St. Botolph Citizens Comm., Inc. v. Boston Redevelopment Auth., 429 Mass. 1, 7 (1999).
The defendants contend that Councilor Graves’s certiorari action must be dismissed because the defendants did not engage in judicial or quasi-judicial action. In determining whether a government body acts in a quasi-judicial manner, the court looks to “the form of the proceeding reasonably employed by the agency, and the extent to which that proceeding resembles judicial action.” Hoffer v. Board of Registration in Med., 461 Mass. 451, 457 (2012). The court considers “the nature of the governing standard, and whether the proceeding ‘consist(s) primarily of un-sworn statements by interested persons advocating or disapproving the proposed new policy, as contrasted with sworn testimony by witnesses subject to cross examination in a hearing preceded by specific charges and followed by the adoption of formal findings of fact.’ ” Alford v. Boston Zoning Comm'n, 84 Mass.App.Ct. 359, 367 (2013) (alteration in original), quoting Pronghorn, Inc. v. Licensing Bd. of Peabody, 13 Mass.App.Ct. 70, 73 (1982).
Here, the actions at issue were the development of an EMS service zone plan and the selection of a service zone provider. Neither of these actions bears any of the indicia of a judicial or quasi-judicial action. There was no sworn testimony, specific charges, or formal findings of fact. See Alford, 84 Mass.App.Ct. at 367. Therefore, certiorari review is unavailable in this case, and the defendants’ motion to dismiss must be allowed.
ORDER
For the foregoing reasons, the defendants’ motion to dismiss is ALLOWED.

 The defendants also contend that the case must be dismissed for lack of service of process, and because Councilor Graves is barred from bringing this action by G.L.c. *550 268A, §17. They also argue that the claim for declaratory judgment should be dismissed for failure to join all necessary parties. Because the motion to dismiss will be allowed on other grounds, the court need not reach these arguments.

 We might also wish to remember that the date of this decision is Jefferson’s birthday.